I would like to reserve four minutes for my rebuttal. Your honors, there were a number of issues filed on this appeal by the appellant, but I wanted to begin with the issue that I think is the most compelling. Your honor, I think the most compelling issue that was presented by Mr. Gonzales on this case is the conclusion of the testimony of the witness Rosa Maria Buelna. This has to do with a number of the other issues indirectly as well, but your honors, this is the most important issue. This woman was to be called as a partial alibi witness on behalf of Mr. Gonzales, and there was a proffer that was made to the court by counsel that had she testified, she would have stated that she was with the defendant, Mr. Gonzales, at the time that he was supposed to have been making some phone calls that would have involved him in the conspiracy. The reason the error is so serious is because it implicates the fundamental right of the Sixth Amendment guarantee under the compulsory process clause that a person has a right to call witnesses in his defense. Your honor, preclusion of a material witness may offend the Constitution, and that's why But, well, of course, constitutional rights can be waived, and I guess the question is whether in making this discovery agreement, and it says that witnesses will be excluded if they're not, you know, listed by such and such a time, waives it. I mean, is that the question? I think that potentially could occur, and your honor, I guess this carries over a little bit into my argument about the ineffective assistance of counsel, but the disclosure A couple of things. One is I did file a Rule 28J letter today, and I provided a copy to counsel. I think that in the case of Bahamond, that there might be a problem with this disclosure agreement in that it's somewhat analogous to the regulation that was discussed in Bahamond. It's not completely reciprocal in that the government doesn't have the same type of time restraints, and also the government specifically states that it will not disclose rebuttal witnesses. But aside from that, the issue is that it appears that the witnesses were disclosed either a day late, if the government did receive the facts that was sent on December 24th, or at the most five days late. But in any case, the witnesses were disclosed prior to trial, and there were remedies that were far less harsh than the exclusion of the witness's testimony. And especially in a case like this, there had already been three continuances granted. The motions had been unopposed. And subsequent to the discussions, there were also two additional motions to continue that were granted. One of them was so that the prosecutor could go on vacation. It was granted for 60 days. This would have required a continuance, a very brief continuance of either a day or five days in order to allow the government to do whatever it needed to get prepared. But beyond that, there wasn't any real claim by the government that they were prejudiced by the late disclosure. Roberts. I thought the problem was with the female, that she and her brother lived in Mexico? Yes. Actually, the problem, the real main issue is with the female. One of the witnesses was withdrawn by defense counsel. He decided not to call that person. And the other witness, although the government complained about the late disclosure, was a witness the government knew about from the inception of the case. And the district court allowed that witness to be called. Yes, exactly. So that was the female, and she apparently resided in Mexico. Right. She resided in Mexico. She had been present at a couple of hearings in the United States, some bond type of hearings previously. But, Your Honor, also the court let her testify as a rebuttal witness for the defense. The only thing they precluded in terms of her testimony was the one limited area of the limited alibi. They let her testify about a number of other important issues. And the record indicates that the government was quite well prepared to do a cross-examination on her. The district court had mentioned something about that the prosecutor wouldn't have had time to interview her. I don't know that he made any efforts to interview her. There's nothing in the record that says he did, or that a brief continuance wouldn't have given him that opportunity. But it seems that in terms of investigation of the case, things about her were investigated. The government knew everything about her addresses and that sort of thing. Her brother was the owner of these cell phones. They knew that. They had all the phone records. They could have been well prepared. And in any case, the brief continuance would have put the disclosure in compliance with the 14-day time limit. I wonder if you'd address the defendant's desire to change counsel. Yes, Your Honor. Thank you. I would like to do that as well. Your Honors, Mr. Gonzalez was not happy with his counsel, and he asked counsel to file a motion to withdraw. Mr. Gonzalez wanted newly appointed counsel. The motion was filed in a very timely manner. It was over 30 days prior to trial. Most of the cases that were cited in the briefs were cases where somebody wanted new counsel either the day of trial or even during trial, and courts, of course, have found that to be untimely. But I believe it was the Smith case that was cited by the government actually held that if a motion is filed at least 30 days prior to travel, that it does favor the defendant. And how many continuances had already been granted? At that point, there had been three continuances previously granted. They were all unopposed. Some of them at the government's request. That's correct, Your Honor. But I think even more compelling were the subsequent continuances, and that's the one I mentioned earlier, a 60-day continuance so that the prosecutor could go on vacation. And then there was even another continuance after that. So it's very hard to see what the pressure was, the hurry was, to prevent him from getting counsel he wanted. Exactly, Your Honor. And also, this was the first request that had been made by the defendant. And one of the cases that was cited by the government in their 28-J letter, Hudson v. Russian, talks about the loss of confidence. In other words, if the defendant has lost confidence in his counsel, then that weighs in the defendant's favor. And what the court is supposed to do is balance the idea of appointing new counsel against society's interest in prompt and efficient administration of justice. And I don't think that was a problem in this particular case at all. If we concede, for purposes of argument, that it was a timely motion, how about the merits of it? In other words, if I understand your brief, you're saying that the court was concerned only with competence of counsel and really didn't go beyond that. But was there any complaint other than about his competence? Well, Your Honors, the court — one of the things that disturbed me was that the court started out the hearing without talking to any of the parties involved and basically told the defendant that his attorney was competent and that he didn't want to waste the money of the taxpayers and that in any case somebody might need more time to get ready. And then after that, he asked the defendant what the issues were. I think the judge chilled the inquiry by starting out that way. And he did not really focus on the lack of communication or the issues between counsel and the defendant. The defendant did bring up that his phone calls weren't being returned, that a motion to continue was filed without it being discussed with him, that he couldn't get in to have an appointment. He didn't know what was going on with his case. And the defense attorney defended himself and said he wasn't aware of those kinds of things. But I think that that's always a problem in these kinds of cases, is that there is somewhat of a conflict of interest between what the attorney is going to say about his professionalism and his contact with his client. And what the client's going to say. And also there was no inquiry in private. Everything was done in open court. And while the government did cite a case that says that the court's allowed to ask the government's attorney what they think about it, I really think it's none of the government's counsel's business what the relationship is between a defendant and his attorney. I don't think the court made adequate inquiry into the lack of communication and how it was affecting the defense. And I think that's borne out later, where even after the trial, Mr. Gonzalez still was requesting new counsel. And finally, the district court judge granted that and gave him new counsel. Are there any particular issues, other issues, that the court is interested in? I was considering addressing next the issue of the ineffective assistance. Your Honors, I know that there are a lot of people who are interested in the ineffectiveness of the witness. The ineffective assistance just fold into your argument about the witness wasn't allowed to testify? Exactly, Your Honor. I know that the government argued that it could have been some sort of trial strategy or some type of tactical decision. But I don't think there's any evidence of that in the record. When counsel was asked why he didn't file the notice on time, he said that it was because he didn't know if the witnesses would be available for trial. But that's really not the inquiry. And all he had to do was do a partial disclosure of whatever information he had to show good faith and to put the government on notice. And I think that it would have been protected and that witness probably would not have been precluded. You know, you've got a lot of time left, but you have no obligation to use it up. Well, Your Honor, the issue that talks about the motion for new trial, I'm not going to discuss. I'm going to leave that on the brief because it encompasses all of the other issues. Why don't you save the balance for rebuttal? I promise I think I'll do that. Thank you. Okay, thank you. May I please have the court. My name is Bruce Ferg, Assistant United States Attorney on behalf of the government. I'll address the two issues initially that counsel has talked about and the court is interested in. And then we can see if there's anything else. First of all is the issue, and it should be emphasized, it's a partial preclusion of Rosa Buelna because, in fact, she was allowed as a rebuttal witness to come in and testify to some degree about where she had lived, which was to some degree an issue because of where the cell phones that Alonzo, her brother, had owned had been issued and so forth. But the biggest thing we have to recall here is, first of all, the standard of review. Compulsory process issues, as was pointed out, can be waived. And in this case, they were. No compulsory process claim as such was ever raised. And so, at most, we're talking about review for plain error. And plain error there wasn't. My opposing counsel referred the court to her 28-J letter with the Bahamund, however it's pronounced, case. I would suggest that's totally distinguishable because the agency regulation that was involved there was essentially a one-way street. But the whole point of the disclosure agreement in this case was that Jenks Act material, which did not technically have to be revealed to the defense until right before trial or even after the witnesses had testified, the government said, we will give this to you well in advance of trial so that you can develop your defense and do whatever you want as long as, in return, you will tell us when you have potential witnesses. And I would refer the court to the language of the agreement, which is ER20. Potential witnesses. And we know from the record that the defense counsel actually was aware and told the government without specifying who was going to do it, that he had in mind to present this so-called partial alibi defense as early as August, four months before he got around to saying, oh, by the way, it's going to be Rosa. So if we're talking about timeliness, certainly we have a severe issue here of why, in fact, there was no disclosure. From reading the Jenks agreement, I couldn't quite tell, when was the government going to disclose the Jenks material? It was disclosed immediately upon the signing of that agreement. It's not that part of it, the disclosure, you know, the whole stack of it is obviously not part of this record, but it was promptly upon the record, upon that agreement being signed by the defense counsel. And note also that it was also signed by the defendant himself. And it affirms in there that he's looked at it and understands it so that he recognizes personally his obligation to make this kind of disclosure. So whatever we may think about the defense counsel and how he handled it, this is not something where we can avoid the fact that, as the defense counsel himself said, the defendant was involved in the selection of witnesses. Do you think implied in this agreement is some sort of good faith exception or good cause exception? Well, the case law that I offered in my brief indicates that. Basically, we have a contract. And it's fundamental contract law that you are always assumed to be acting in good faith. So by saying, sure, we can. No, I meant that in order to invoke this, to exclude a witness, that if the defendant could show some sort of good excuse, is that built into this? That's not provided in high verba, but certainly, again, because. And does this expressly say that he's waiving his compulsory right? It does indicate that if he fails to fulfill the terms of it, that exclusion is the sanction that will be applied. I believe that's paragraph six. Did he sign it? He didn't sign it. But the counsel who signed it says that he has explained the terms of the agreement to the defendant and that he agrees and understands.  We, the government, will give you early disclosure of all this JNCSAC material that you otherwise would not be entitled to have in return for you, in good faith, telling us when you have potential. He has the right to get it. It just wouldn't be after you called your witnesses. And then they'd say, we want a continuance. We need a continuance so we can look at this material. And the judge would say, OK, you can have it overnight. But it's obviously of great benefit to the defendant to understand what the case against him looks like well in advance of trial so that he can, in fact, develop an alibi or whatever other kind of defense. So we have, I would suggest, a real timing problem here. And the fact that Rosa was in Mexico should not have been a bar. This was the self-proclaimed girlfriend of the defendant who posted his bond. And it's important to notice the dating, that she, in fact, was in Tucson with the defendant with the defense counsel on February the 5th. Posting his second bond, which would allow him to travel around, which is after she had moved to Mexico. So there obviously were means by which she could be gotten into contact with. And yet, even after that, and after saying then in August we're going to have this partial defense, no disclosure of her or what she was going to be saying was made until December on the eve of trial. As far as the related, in effect, assistance of counsel claim, obviously that is not something which is typically handled on a direct appeal. I would suggest that it is particularly inappropriate to do it here when there is some question about who made the decision. This is very like, I think, the Eckert versus Tansey case in the brief where there's some suggestion that, in fact, it was the defendant's own hook or his reasoning why it was not disclosed. So it's certainly not appropriate to pin that on the defense counsel, but we don't have the record. And so that's something that ought to be developed further. If, in fact, you even find prejudice, I would suggest on the available record you can see that there was no real prejudice here. Basically, what Rosa was going to be called to say was that 5 o'clock in the morning of December the 13th, the day after the marijuana had been found, the defendant was not making cell phone calls because they apparently were sleeping and living together. I wonder if you'd go on and talk about the counsel question. Certainly. The, this court's cases have made clear that what we're looking at, although there are three primary factors that you focus on, is really a totality of the circumstances analysis. What really happened? The most important is whether there was, in fact, a total breakdown in the communication process. Uh, I think that arguably, again, we have a timing issue. Well, what's the timing issue? Well, in the sense that... It turned out to be quite immaterial, did it not? But the court, at the time that it ruled on the motion to change counsel, didn't know that there were going to be... It saw it, but it had already let it go three times. What it knew was that... Isn't that right? Yes, sir. It continued it three times. There was no pressure to get the... This was not a... Something there were a lot of people and so forth. No, I mean, the time was dispensable, as subsequent events proved. So, I mean, it's very hard to see anything except impatience on the part of the judge. I don't know if I... Should we let that kind of impatience, uphold that sort of impatience? I don't believe it's merely impatience, but even if it were, that is only one factor. The critical factor is... How it deprives the defendant of counsel of his choice. That's not critical. Only if, in fact, there was a good reason for the change of... How a judge never went into it. Well, he did. My opposing counsel has said that the magistrate chilled the expression, but that's not really what happened. What the magistrate did was, based on his experience, lay out that there are often misconceptions about what the grounds you can offer for... He just didn't express his experiences. He gave the defendant a nice little lecture right at the very beginning. And then he said, you know, understanding... Unnecessary lecture. Well, I believe that what he was trying to do was show that there were lots of things that might be suggested that they really didn't go into because they weren't legal grounds. But then he did ask... I didn't think he asked the questions first and saved the conclusions for later. He may have believed in his discretion that this was the most efficient way of dealing with it. But the bottom line is... But it turns out to be a problem. Pardon me? It turns out to be a big problem for you. I'm telling you that right now. It's a big problem for the government that this was handled this way. It may not have been the best way, but I don't think it's fatal to the inquiry. It's a bad way. The defendant was allowed and encouraged to express the particular reasons that he had for making the change. And that really is ultimately what... And the lawyer wasn't getting in touch with him. The only time that he complained about him not being in touch with him was during the first eight days. And in fact, what the lawyer explained, not in opposition or not saying don't agree to the motion. He said, I'm willing to step aside if that's appropriate, but simply explaining, as happened in the McKenna case, what the facts were. How often had the lawyer talked to him or seen him? He said that by the time of this hearing, that had been several times. And in fact, they'd gone... Several times, you mean? That was not explained any further, but it's obviously at least two or three. Could be two, three. But... How long? Do we know? Pardon me? Do we know how long he saw his client? No, Your Honor. Well, I mean, those are questions the magistrate should have found out, asked and found out. He can't sit there supinely and do nothing. Well, I think that... And the government counsel could bring it out if he wanted. I think that the... But he held it in open court. It wasn't in the chambers. I would suggest that the parameters of the magistrate's inquiry depend to some degree on the kind of complaint that is made to him. What is going on here? For example, this is not like... About communication. He doesn't find out what several means. He doesn't find out how long they were. But this is... He's sitting there like a dummy. This is not like, for example, the Daniels case and some of the others that are relied on by... Maybe not, but it's not... It still doesn't have a good smell. The defendant felt no constraint about making his responses and lack of validity of his reason is shown by the fact... The adequacy of the hearing and the adequacy of the magistrate's fulfillment of his job. Well, I would suggest that, again, how deep the inquiry has to go depends on what reason the magistrate has to inquire. And simply to take every single complaint from a defendant, I'm not seeing enough of my lawyer, is simply impractical. In this case, defendant rattled off. He doesn't show up and talk to me. But in fact, he'd been released eight days after the initial appearance on behalf of the co-counsel. He says, he doesn't return my phone calls. That was not something he was aware of. And then he says, oh, there's something else, but I can't remember what it was. This did not appear to be a serious breakdown in communication. When the defense counsel said, he's not being obstreperous. He's not being a problem. We can communicate. The defendant didn't suggest, as in, for example, Daniel's, oh, I've got all kinds of big problems with this counsel, and I need to talk to you privately or anything else. So the real issue is, was the... Could it have been a better inquiry? Certainly. But was it adequate, given the basis that was presented to the magistrate, to believe that there was any kind of a serious problem? And I think if we're going to talk about subsequent events, it's very significant that there were no subsequent complaints until when? After the conviction. Obviously, the defense is not going to be happy at that point. So it's hardly surprising they'd want another change of counsel. But at no point, even in subsequent hearings, when the defense counsel is saying, we're talking about this, we're selecting the witnesses, and so forth, was there any suggestion that the defendant was at that point unhappy with this counsel? So yes, there were some communication problems, but that's hardly unusual in a criminal case. I'm sure you, in your experiences, you've seen many, many of these cases where, no, you can't possibly be at the jail as many times as a defendant would want. But the question was, was there a total breakdown in communication, such as prime and the other cases that we're talking about have found sufficient grounds to change counsel? No. Nothing approaching it. Well, if you just read this transcript of this, of the colloquy with the defendant, it is less than satisfying. I'll just put it like that. Then perhaps there should be, in the three-part analysis, it should be pointed out that this was a less than satisfactory mode of analyzing it. But again, the ultimate question is, was he deprived of counsel? Was he deprived of real assistance of this counsel? It's not an ineffective assistance of counsel case. Not in so many words. It's a question of free choice of one's lawyer. It's very different from ineffective assistance. Well, the three-factor analysis has been used both for this kind of case where it's physically talking in terms of change of counsel, it's also been effectively transferred to a conflict of interest. So perhaps I should not have used it. I'll read it backwards. Well, the issue here is not a conflict of interest. It's whether this man had an opportunity to be represented by the lawyer he wanted. Well, he has to pay for that. I mean, this is an appointed lawyer. Exactly. And I guess the question is whether there's a sufficient breakdown in communication or some reason why this appointed lawyer should be removed and another appointed lawyer put in his place. And that's why the third prong of the analysis is total breakdown in communication so that in effect, he's not allowed to present a defense. But we do know that he expressed serious concern with his lawyer. He says, I really feel alone. My freedom and my future depend on this. And this case is about something that I'm not guilty for. And I need to prove that. I'm innocent. In order to do that, I need someone to help me who is interested in the case. And there is no real follow-up by the district court judge about, let's talk about the problems. What is it? Why can't you talk with your client, with your counsel? Nothing, except a good lecture before that statement about, we don't want to waste the taxpayer's money. And what I'm concerned about is making sure you get competent counsel. And Mr. Jacobs is a competent lawyer. Yes. And then asked, and what are your specific complaints? Which the defendant then explored and were so insignificant that he couldn't even remember what the fourth one was. So we have three. None of which apparently had any significant basis. I don't know if the court has questions about any of the other issues. I would suggest that the 404B evidence issue is not close. This was a classic use of 404B evidence. Likewise, I would suggest... What's the allowed purpose of the... I mean, it's in to prove what? The 404B evidence. In this particular case, essentially 404B being inclusive rule says you can bring it in for knowledge, intent, lack of mistake, and so forth. And that's essentially what we had here. The defense was, I was just a good Samaritan out with a young Mr. Camargo trying to find his brother and repair his truck. And so I really had no connection at all with that marijuana that was out there. And so obviously, when you put in the context of all the connections that were shown, the cell phones and so forth, there's a question of, well, what is his connection to this obviously proved conspiracy? Was he in it or not? And so by showing that, in fact, he had a prior conviction for a very similar offense, that certainly is legitimate evidence that he had the kind of... I must say that 404B, I've always had a hard time telling what, why you're not ultimately depending on a propensity in a situation like that. He did it before, he's probably going to do it again. And that's 404B says you're not supposed to use it for that purpose. And there were both curative and not curative limiting instructions given immediately after the evidence was admitted and finally and in the arguments as well. So this is essentially a replay, I would suggest, of a Ramula Ruiz. I agree, it's a typical use. So was it used to show intent, motive? Yes. All of them? That's an issue. Everything. It's basically state of mind. I mean, we pick out these pigeonholes or these particular terms that are used, but it's essentially, what was your intent in being out there? Was it in fact an honest, good Samaritan type of situation? Or is there reason to believe that you were involved in this conspiracy that all of the circumstantial evidence indicates that you were? And so like other circumstantial evidence, it indicates that yes, he knew exactly what was going on and intended to be a part of it. There's the Sears instruction. This is not a Sears case at all, and I can describe that in detail or if there are any other questions, I'd be glad to answer them. Go ahead. Thank you. Thank you. Okay, so you saved seven minutes. You don't have to use it all. Try not to. Your Honors, I wanted to start out with the issue of the standard of review for the preclusion of the witness. I disagree entirely that the compulsory process claim was waived or worse, that it was never even raised. The words weren't used, and the government's counsel several times in its brief talked about the failure to use magic words, and I don't think we need to do that. But the issue was raised and very vigorously argued, and the prosecutor, excuse me, the defense counsel brought up the fact that the prosecutor did nothing to try to minimize whatever surprise or prejudice they supposedly had by not having that witness disclosed. I think under Bahamond, the standard of review is de novo. At worst, it would be for an abuse of discretion. So I wanted to just address the standard of review there. As far as the 404B information goes, I think Your Honor hit the nail on the head with that. It's really hard to understand why that evidence comes in, and in this case the government never filed its notice of intent to use 404B. So the defense did not have any notice of what purpose the government intended to use it for. I believe that the government named a couple reasons just right out of the rule, and then the judge went on to name every single one of the listed reasons and said that that's why the evidence was going to come in. But the truth is that the prior offense was not a conspiracy, the prior conviction, so it couldn't have been used for any probative value regarding association or plan, and it would be a very limited value for knowledge and intent because, in fact, the charge and the facts of that case were very different. I think that in this particular issue, the government's attorney really highlighted the problem with using this 404B type of evidence when he started recharacterizing the prior as a marijuana smuggling conviction, went on and on about that until finally there was a sidebar and the judge told him to stop saying that because there was no evidence that the prior had anything to do with smuggling. The prior was for possession of 94 pounds of marijuana and was actually somewhat dissimilar, except for the fact that it involved marijuana. And the government's attorney also tried to go into the dismissed charges and the plea agreement and all sorts of other irrelevant issues. The defense objections were sustained regarding that, but I think it made it pretty obvious that the government was using the 404B evidence precisely for what it is not allowed to be used for, and that's propensity. This was a very weak circumstantial case, and the government needed that evidence about the prior conviction basically to say he did it before, so he did it again. And despite a limiting instruction, I really question the effectiveness of those limiting instructions. I know that the jury is presumed to follow instructions, and they probably try as hard as they can, but it's just human nature that the minute they hear somebody did it before, they're going to be way more inclined to find that they're guilty and that they did it again. Unless the court has other questions, I'll leave the rest on the record of the briefs. Here we go. Thank you very much, and we appreciate your arguments. The matter will be submitted. Thank you. Our next case is Boris Blankenship v.
judges: Canby, Noonan, Paez